**Steven GIACOMAZZI, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4633.**

Supreme Court of Alaska.

Sept. 4, 1981.

---

Robert A. Rehbock, Rehbock & Rehbock, Anchorage, for appellant.

Gayle Horetski, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.*

## OPINION

BURKE, Justice.

This case presents issues involving the right to counsel under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and the sufficiency of evidence to support an indictment under Alaska Criminal Rules 6(q) and 6(r).

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

Phillip Dale Moxie was robbed by a group of men on August 29, 1978. Steven Giacomazzi was one of several suspects arrested on August 30 for participating in the robbery. Soon after his arrest, Giacomazzi made a tape recorded statement to Lieutenant Milton Olson of the Seward Police Department.

On September 28, 1978, Giacomazzi was indicted for robbery, under former AS 11.-15.240. Prior to trial, Giacomazzi moved for suppression of his taped statement to Olson. He also moved for dismissal of the indictment based on insufficiency of the evidence to support it. Following evidentiary hearings, both motions were denied by the superior court. Giacomazzi was convicted by a jury in January, 1979. This appeal followed.

## I. MIRANDA

Giacomazzi testified at a pretrial hearing that after he was arrested he was taken to the Seward police station. He waited there in a room by himself until Lieutenant Olson came to get him.

Olson asked Giacomazzi to come with him to his office. According to Giacomazzi, as they walked to the office Giacomazzi "asked when [he] was going to be able to talk to a lawyer or make a phone call." Giacomazzi testified that Olson responded "that there wasn't a lawyer present at the time, that it would be a day or so before we could talk to one, more than likely up in—once we were returned to Anchorage where it would be easier to get together with him . . . ."

Then, Giacomazzi testified, he [Giacomazzi] said, "[O]kay, well, then what's next? And he [Olson] said we're going to make a recording. And I said, well, I'd like an attorney. He said it would be easier to get the recordings, make a statement now, and get the recordings over with." Giacomazzi further testified that "[Olson] said that if I made—helped him on the recording and made my statement, that somehow they'd make it easier on me. So I just went on."

Olson's testimony contradicted Giacomazzi's. Olson testified that nothing was said between him and Giacomazzi before the tape-recorded interrogation began except perhaps "minor talk like, will you come with me and we'll talk about this matter in my office, or something like that." When asked whether the minor talk could have included Giacomazzi asking how long it would be before he could see an attorney, Olson testified, "No, sir. Because if he had once indicated attorney, I wouldn't have pursued the questioning until he wanted to talk." Olson said that the suspects' first reference to attorneys was after all suspects had been interrogated.

Olson also testified that he informed Giacomazzi of his *Miranda* rights and that he gave Giacomazzi a written waiver form. After Giacomazzi said that he did not understand the form, the following exchange took place:

Lieutenant Olson: Okay, basically these rights here, you understand those.

Giacomazzi: Yeah.

Lieutenant Olson: Okay, this is a waiver of the rights momentarily. Any time you want to you can invoke your right. If you want to discuss this case you are in here for with me, regardless if you are involved or not involved. And this is a waiver of those rights momentarily at least. The case, of course, involves a mugging that took place Monday night. You know, all of it. Okay, this is what it entails. And of course you've been directly involved. I'll say that. You are under arrest for robbery at this point, and charged with being a principal of the crime, along with the other 3 guys, plus the kid I had on the bus pointing you guys out. Okay, so if you want to discuss it with me now, sign here, and at any time you want to stop the questioning, you can say and request it. Since I have got about 3 different kinds of stories on what actually went down, how it went down, whose idea it was, I will just let you take it off from the top and let you tell me your story.

Olson testified that at that point Giacomazzi signed the written waiver form. No evidence of the content of Olson's *Miranda*

warnings or of the written waiver form appears in the record on appeal. However, because Giacomazzi has not challenged the sufficiency of the warnings or the waiver form, we will assume that they contained an adequate description of his *Miranda* rights.[1]

Giacomazzi argues that his alleged inquiries about counsel cut off Olson's right to question him in the absence of counsel. As noted above, the testimony of Olson and Giacomazzi conflicted on the factual issue of whether Giacomazzi made any reference to an attorney prior to his interrogation. Thus, the trial court was required to judge the credibility of those testifying and did so in favor of Olson.

■ Before discussing the resolution of credibility required in this case we set out the principles governing custodial interrogation of a suspect who requests the assistance of an attorney. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), an individual subjected to custodial interrogation has both the right to consult with counsel prior to questioning and the right to have counsel present during any questioning. *Id.* at 469–70, 86 S.Ct. at 1625, 16 L.Ed.2d at 721; *see State v. Cassell*, 602 P.2d 410, 418 (Alaska 1979). *Miranda* states that if a suspect "indicates

in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 707.

■ A court applying this rule must first determine whether the defendant before it did invoke his or her right to have an attorney present at the interrogation. This threshold determination may require resolution of factual conflicts, but it is plain that "a suspect may indicate that he wishes to invoke the privilege by means other than an express statement to that effect; no particular form of words or conduct is necessary." *People v. Randall*, 1 Cal.3d 948, 83 Cal.Rptr. 658, 464 P.2d 114, 118 (1970).

■ If the court finds that a suspect did invoke his or her right to have counsel present, then "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, —— U.S. ——, ——, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (5/19/81).[2] The Court in *Edwards* stated that the suspect must be the one to initiate "further communication, exchanges or conversations with the police." *Id.*[3]

---

**1.** A typical "*Miranda* card" used by police officers contains the following warnings:

1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you're being questioned.
4. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish.
5. You can decide at any time to exercise these rights and not answer any questions or make any statement.

*State v. Cassell*, 602 P.2d 410, 412 n.4 (Alaska 1979).

Giacomazzi concedes that he signed a written waiver of his *Miranda* rights.

**2.** The *Edwards* Court thus continued to distinguish between a request for counsel and a suspect's decision to remain silent. —— U.S. ——, 101 S.Ct. at 1885. The Court cited Justice White's concurrence in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, stating that:

the reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto. The authorities may then communicate with him through an attorney. More to the point, the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism.

*Id.* at 110 n.2, 96 S.Ct. at 329 n.2, 46 L.Ed.2d at 325 n.2.

**3.** The high court's holding in *Edwards* requires us to alter our previously stated position not requiring that the suspect initiate subsequent contact with the police, but instead to "carefully scrutinize the particular facts before us." *Ladd v. State*, 568 P.2d 960, 966 n.8 (Alaska 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978).

It may be difficult for a police officer to determine whether a suspect indeed intends to invoke his right to have an attorney present. *See Miranda*, 384 U.S. at 485–86 & n.55, 86 S.Ct. at 1634 & n.55, 16 L.Ed.2d at 730 & n.55. For this reason, the officer may seek clarification of the suspect's desires. *Mallott v. State*, 608 P.2d 737, 742–43 (Alaska 1980). "This is not to say that an interrogating officer may utilize the guise of clarification as a subterfuge for coercion or intimidation." *Nash v. Estelle*, 597 F.2d 513, 517–18 (5th Cir., en banc 1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409.

The ultimate inquiry by the court must be whether the state has met its "heavy burden" to show that defendant has made a knowing and intelligent waiver of his or her right to have counsel present during questioning. *Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; *Tarnef v. State*, 512 P.2d 923, 934 (Alaska 1973). In making a decision on this question, the court must keep in mind that it is incumbent upon the state to show that the defendant intentionally relinquished this right, and that it must "indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 439–40 (1977).[4]

Our own review of these questions when they are presented on appeal is necessarily bifurcated. First we must examine the trial court's factual findings concerning the events in question. In so doing, "we view the record in the light most favorable to upholding the trial court's ruling." *Stumbaugh v. State*, 599 P.2d 166, 172 (Alaska 1979). This comports with the clearly erroneous standard applied recently in making the related determination of whether a confession was in fact made. *Troyer v. State*, 614 P.2d 313, 318 (Alaska 1980). But as we noted in that case, once we turn to the question of whether a waiver should be found in a given factual setting, "we have a duty to examine the entire record and make an independent determination." *Id.*

In this case, the superior court rejected Giacomazzi's testimony that he made a direct request for counsel to be present at interrogation, and found that he may have made a "general inquiry about the predicament" he was in, but "not one with specific

4. While the U.S. Supreme Court has held that the federal standard with respect to voluntariness of a confession is the preponderance of the evidence test, *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618, 627 (1972), the court has not set such a standard with respect to the issue of a waiver of *Miranda* rights. Rather, the high court has often noted the state's "heavy burden" of showing a waiver, language that was used in *Miranda*. *Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; *Fare v. Michael C.*, 442 U.S. 707, at 724, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 at 212; *North Carolina v. Butler*, 441 U.S. 369, 372–73, 99 S.Ct. 1755, 1756–57, 60 L.Ed.2d 286, 292 (1979). The *Miranda* court referred to the state's burden as part of "high standards of proof for the waiver of constitutional rights." *Id.* (citation omitted). Since *Lego* was decided, some courts have turned to a preponderance of the evidence standard with respect to a waiver of *Miranda* rights, often citing *Lego* for this result. Others have continued to rely on the language contained in *Miranda*, without further explanation of the standard.

As recently noted in *Troyer v. State*, 614 P.2d 313, 317 n.9 (Alaska 1980), we have previously utilized the preponderance standard in determining voluntariness. There, however, we did not have to reach the defendants' contention that the "beyond a reasonable doubt" standard should be applied as a matter of state law.

With respect to the standard for waiver of *Miranda* rights, some of our past decisions have confusingly combined the question of voluntariness with that of waiver of *Miranda* rights, by asserting that the state meets its burden "if it shows the *confession* was voluntary by a preponderance of the evidence." *Quick v. State*, 599 P.2d 712, 718 (Alaska 1979) (emphasis added). The use of the word "confession" in discussing *Miranda* rights shows the confusion of the inquiry as to a waiver of those rights with the distinguishable determination of whether a confession is sufficiently voluntary to be admissible. *See Edwards v. Arizona*, —— U.S. ——, ——, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (5/19/81). In *McMahan v. State*, 617 P.2d 494, 498 (Alaska 1980), *cert. pending*, Sup.Ct. No. 80–6387, we resolved this confusion by stating that the preponderance standard applies to *both* the voluntariness and the *Miranda* inquiries.

direction to having access to an attorney."[5] The court also found that Lieutenant Olson made no direct response to Giacomazzi's inquiry, but rather directed Giacomazzi to his office. Of necessity, the court had to choose between the conflicting testimony of Olson and Giacomazzi, and in view of its opportunity to view the witnesses and judge their credibility we find no basis to overturn its choice.

■ We therefore conclude that Giacomazzi did not invoke his right to have counsel present during interrogation, and Lieutenant Olson thus acted properly in proceeding to discuss with Giacomazzi his *Miranda* rights. The trial court's finding that Olson did not tell Giacomazzi that no attorney would be available for some time indicates that Giacomazzi did not believe an assertion of his right to have counsel present would be futile. Compare *People v. Harris*, 552 P.2d 10, 11 (Colo.1976) (police told suspect that no attorney would be available for two days, waiver held invalid).[6]

Instead, the transcript of Olson's conversation with Giacomazzi preceding the lat-ter's signing of the waiver form shows that Giacomazzi indicated his understanding of those rights and shows no coercion by Olson.[7] Giacomazzi asserts that the signed form should be disregarded in light of (1) his youth (he was nineteen), (2) his military training "in compliance and obedience to authority," and (3) the length of his detention prior to interrogation, allegedly one and one-half hours.[8] Despite these circumstances, we hold that the state has met its burden to show that Giacomazzi understood his rights, and voluntarily exercised his right to waive them and to make a statement to Lieutenant Olson.

## II. INDICTMENT

Giacomazzi argues that the robbery indictment against him should be dismissed because there was insufficient admissible evidence to support the indictment.

The same grand jury which indicted Giacomazzi also indicted the four other alleged participants in the robbery. The only grand jury testimony implicating Giacomazzi was by Olson.[9] Olson summarized statements made to him by Giacomazzi after

**5.** We think this statement by the superior court adequately resolves the factual conflict between the testimony of Lt. Olson and Giacomazzi. The court plainly stated that it believed Lt. Olson, who testified that he would not have questioned Giacomazzi if he had asked for an attorney. Contrary to the position of the dissent, we believe the court below adequately resolved the credibility issue and found that Giacomazzi did not make a request for counsel.

The trial court's statement that is quoted at length in the dissent was recognized by Giacomazzi's counsel to be "straddling the fence," and the court then made the findings quoted in the text above at counsel's request. We therefore see no reason to remand for further findings, when it is apparent that the court rejected Giacomazzi's testimony that he asked for counsel to be present.

**6.** Our prior decisions have stressed the importance of informing a suspect that he or she has the right to have counsel present at the time of any questioning. *State v. Cassell*, 602 P.2d 410, 419 (Alaska 1979); *Schade v. State*, 512 P.2d 907, 914–16 (Alaska 1973). While it is not error to tell a suspect that it will be some time before an attorney is appointed (*Id.*), the warnings given under *Miranda* must adequately inform the accused that even though this is so, there is a right not to proceed with interrogation until an attorney is present. Thus, while *Schade* upheld a warning including a statement that there would be a delay in appointing counsel, "we recognized in *Schade* the importance of informing the suspect that the right to counsel is a present right, not a right which attaches at some future indefinite time." *Cassell*, 602 P.2d at 419.

**7.** In requesting the waiver, Olson said, "Okay, so if you want to discuss it [the offense] with me now, sign here, and at any time you want to stop the questioning, you can say and request it."

**8.** While Olson indicated at the suppression hearing that the amount of time Giacomazzi was held prior to interrogation could have been up to an hour and a half, he testified more precisely at trial that the wait could not have been longer than 50 minutes.

**9.** The victim, Phillip Moxie, testified that he was assaulted and robbed on August 29, but he could not identify any of the participants in the offense.

summarizing statements made to him by the other four alleged participants.

> Criminal Rule 6(r) provides in part:
>
> Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

The state concedes that it may not rely on Olson's testimony about statements by Giacomazzi's alleged coparticipants to support the indictment of Giacomazzi. This is because the assistant district attorney presenting the case failed to state for the record any justification for the use of hearsay evidence. The state argues, however, that the indictment was justified by Giacomazzi's admissions as recounted for the grand jury by Olson.

■ The use of inadmissible hearsay evidence in violation of Criminal Rule 6(r) will not vitiate the indictment if other evidence was presented which justified the indictment. *State v. Taylor*, 566 P.2d 1016, 1019 (Alaska 1977). The only non-hearsay evidence implicating Giacomazzi was the testimony about his admissions. Therefore, the issue under Criminal Rule 6(q) [10] is whether the testimony about his admissions "presented a sufficiently detailed account of criminal activity and the defendant's participation in this activity so that 'if unexplained or uncontradicted it would warrant a conviction of the person charged.'" *Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972), *quoted in Lupro v. State*, 603 P.2d 468, 473 (Alaska 1979).

Olson testified that Giacomazzi was the last suspect he interviewed. His full testimony before the grand jury concerning Giacomazzi's admissions is as follows:

> He was given his full rights, waived his rights, and he made no hesitation. He immediately related the full details of the incident as he knew occurred. That the thing started—the 4 of them were across the street earlier in the evening drinking,

smoking a couple of hits of grass that they had left when this Swenson came up to them, and was telling them about this GI—or this native, the victim, who had probably quite a bit of money on him. He was talking about making a—quite a bit fishing this year. And in the process, I don't know who brought it up, but there was a decision made amongst these 5 to roll the victim. Mr. Giacomazzi and Mr. Swenson went over to the bar. Mr. Giacomazzi stayed outside while Mr. Swenson went in to get the victim. When they came back out, the 3 of them walked over to the building and down the stairs. A person inside struck the victim, they drug [sic] him back inside, and they all more or less participated looking for the money, as we understand it. Both by going through the wallet and/or through the pockets, or assisting in tying up the victim. And then all left the scene together. He again stated they had only recovered about $4.00.

In deciding whether Olson's testimony was sufficient to support the indictment, we cannot consider his testimony that "they all more or less participated looking for the money, as we understand it. Both by going through the wallet and/or through the pockets, or assisting in tying up the victim." This testimony by Olson was not in fact based on Giacomazzi's admissions. According to the transcript of Giacomazzi's interrogation, read into the record at trial, Giacomazzi made no statement about participating in the restraint of Moxie or the search for money. Instead, Giacomazzi told Olson that immediately after Moxie entered the area where he was struck, Giacomazzi went back up the stairs and waited while the others looked for money. If this portion of Olson's testimony had any basis it must have been hearsay and therefore, as conceded by the state, cannot be deemed to support the indictment.

■ Nevertheless, we believe that the remainder of Olson's testimony about Gia-

10. Criminal Rule 6(q) provides in pertinent part: "The grand jury shall find an indictment when all the evidence taken together, if unex- plained or uncontradicted, would warrant a conviction of the defendant."

comazzi's admissions was sufficient to support the indictment under the standard of Criminal Rule 6(q) and *Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972). Olson's testimony conveyed the idea that Giacomazzi admitted to participating in the decision to rob Moxie. This was consistent with Giacomazzi's actual statement to Olson. Olson further conveyed Giacomazzi's admissions that he and another participant walked the victim from a bar to the place where he was assaulted. Although the question is extremely close, we believe that these admissions, taken together, were sufficient to establish Giacomazzi's accomplice liability for robbery.

The conviction is AFFIRMED.

COMPTON, J., not participating.

RABINOWITZ, Chief Justice, dissenting, joined by DIMOND, Senior Justice.

I dissent because I cannot tell, from the superior court's oral opinion, which of its pronouncements are findings of fact and which are conclusions of law. Were it clear that the superior court completely rejected Giacomazzi's testimony and believed Lt. Olson, I would affirm, as the case here presents the typical conflict of testimony which it is the function of the trial court to resolve. *See Alaska Far East v. Newby*, 630 P.2d 533 (Alaska 1981).[1]

However, certain of the superior court's statements read more like conclusions of law or policy pronouncements than like findings of fact. Thus, I think there is a strong likelihood that the superior court's reasoning in this regard may be altered by the recent case of *Edwards v. Arizona*, —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Specifically, those portions of the superior court's opinion which concern me are as follows:

I think it's possible, from the testimony of all 3 of the defendants, that some mention was made of counsel, or of access to an attorney, at or about the outset of the contact with the—with Lieutenant Olson. I regard ... the matter though as being a casual inquiry, not as one in which the defendant perceived his right to counsel as going to his right to remain silent and his right to interview counsel before he proceeded with any statement to the police.... However, I do not perceive that a mere inquiry about making phone calls, about getting back to base, and about access to counsel, as being a request for counsel, or one that would impede the right of the policeman to conduct further inquiry. And that thereafter, if the person receives a *Miranda* warning, an opportunity to sign a waiver o[f] rights, if one is presented to him, as indicating at that time that the person does have the right, and may then refuse to go forward with any further interview. In other words, his attention is more—is directly invited to his rights at that time, and his right to stand upon the rights as—then confronts him in such a manner that he may then decline to proceed. Because as Lieutenant Olson stated, and I believe him, the serious talk about lawyers came up after when the men were confined in their cells and even more so the following day after the arraignment before the magistrate. The court does not perceive anything ·that took place at the outset, and prior to the formal *Miranda* warnings and formal waivers, as constituting a demand by any of these defendants for right to counsel. Every person I assume in this country that is brought in to an investigation by—of a crime is aware of his right to counsel, and it would be a natural subject to make an inquiry about at that time. These men were not shown to have been sophisticated criminals. They were people—apparently anyway in the first contact with civilian law enforcement authority, and I regard the questions, if any took place, and that's even questionable in the court's mind ... as merely a con-

---

1. Lt. Olson's testimony was that Giacomazzi had not asked when he might see an attorney, or how long he would be kept before he could see ·an attorney. Lt. Olson testified that had such an inquiry been made, he would not have pursued any more questioning until Giacomazzi wanted to talk.

cerned inquiry about the situation in which these people found themselves.[2]

In the *Edwards* case, the United States Supreme Court fashioned a per se rule in the right-to-counsel area, holding that an accused who has invoked his right to counsel may not be subjected to further interrogation without counsel, unless the accused himself initiates further communication. Since the superior court's opinion in the case at bar can be read as indicating that the subsequent informing of *Miranda* rights and waiver by Giacomazzi cured any error that may have occurred in ignoring his "casual inquiry" about counsel, the superior court may find its conclusion changed by *Edwards.* If the superior court's finding is one of fact that Giacomazzi had not made a request for counsel at all (as Lt. Olson testified), then its reasoning is unaffected by *Edwards.* If, on the other hand, the superior court's conclusion was one of law that, even assuming some request for counsel had been made, the subsequent informing and waiver ·of *Miranda* rights by Giacomazzi rendered the confession admissible, then I think *Edwards* would compel reversal. Thus, I would remand the case for more explicit findings of fact and conclusions of law by the superior court.

I also think it appropriate to comment on the treatment to be given to the "casual" or "equivocal" inquiry. I think that the same considerations which require that the right to counsel be more rigidly observed after invoked than the right to silence, *see* note 2 of the majority opinion, make it essential that the police and courts be more sensitive to what may be a fairly tentative or timid inquiry concerning access to counsel than in the situation of one invoking the right to silence. The factors which the majority finds insufficient to render Giacomazzi's signing of the waiver invalid (youth, length

of detention prior to interrogation, and military conditioning in obedience to authority) may be more significant in assessing the extent to which we should require an affirmative and unequivocal statement of disobedience to authority in requesting an attorney. These factors are less weighty when we are assessing an individual's written waiver; in that case, cooperation requires an affirmative step, and an individual signing a form can reasonably be expected to understand that he is taking a significant action. By remaining passive, the individual can retain his right to silence. In the case of invoking the right to counsel, the individual who remains passive loses his rights, and thus I think a lower threshold of vulnerability to intimidation is appropriate. It is not unreasonable to assume that the highest point to which an individual might be able to marshal his courage is that of making a tentative or timid inquiry as to when he will be able to talk to an attorney. If the interrogator can regard this as a "casual inquiry" to be brushed off, a great deal of the purpose behind *Miranda* and *Edwards* is lost. "The presumption is that ignoring or rebuffing a suspect's invocation of his or her constitutional rights will convince the suspect that such rights are illusory." *Mallott v. State,* 608 P.2d 737, 741–42 (Alaska 1980).

I think *People v. Harris,* 552 P.2d 10 (Colo.1976), helpful on the point of the "equivocal request."[3] The accused there asked when he could see an attorney (apparently the same sort of "general inquiry" which may have occurred here) and was told (apparently truthfully) that "Monday morning" was the earliest point at which one would be available. *Id.* at 11. The accused subsequently had his rights read and then signed a waiver, just as Giacomazzi did here. Nevertheless, the Colorado court suppressed the statement:

---

2. Although the superior court subsequently explicated its conclusions at the prodding of defense counsel, it still concluded that, although there had been a "general inquiry," it had not been of "sufficient significance" to have alerted Lt. Olson to the need for making a response. Again, I cannot tell whether this conclusion is one of law which might be affected by *Edwards,* or one of fact.

3. I thus disagree with the majority's distinguishing *Harris* on the basis that that case involved delayed access to an attorney. I think the excerpts from the opinion quoted in the text demonstrate that the court's main concern was not the delay, but the nature of the inquiry made. On the latter point, I find the two cases very similar.

Admittedly, the demand was not in the most sophisticated or legally proper form, but it was adequate. At that point, all interrogation should have ceased until an attorney was made available to the accused. The fact that the accused did not 'demand' an attorney does not persuade us that he was not exercising his rights. The accused was young, timid, and inexperienced in such situations; his failure to make a forceful demand for counsel does not dilute the fact that he made a request. The failure of the detectives to honor his request by immediately discontinuing their interrogation violated the defendant's constitutional rights under *Miranda v. Arizona*.

*Id.* at 12.

I do not take issue with the court's pronouncements that a police officer may seek clarification of the suspect's desires if the inquiry concerning counsel is equivocal. However, neither version of the testimony presented that situation. Lt. Olson testified that no inquiry at all was made, and Giacomazzi testified that a direct inquiry was made. Thus, I do not think that rule applicable in this situation.

I would remand the case for more explicit findings of fact and conclusions of law, in light of the discussion above.