Alva NASHOALOOK, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 6462.

Court of Appeals of Alaska.

May 20, 1983.

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Elizabeth H. Sheley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Upon conviction of the offense of sexual assault in the first degree, Alva Nashoalook, Jr., filed this appeal. Nashoalook contends that the trial court committed error in denying his pretrial motion to suppress a confession that he gave to police shortly after his arrest. Nashoalook also maintains that the sentence he received is excessive. We affirm the conviction and sentence.

On the night of April 11, 1981, in the village of Wainwright, D.A., who was then sixteen years of age, was visiting at the home of her sister and brother-in-law, Dorothy and Alva Nashoalook. The Nashoalooks and D.A. spent the night of April 11 and the early morning hours of April 12 drinking vodka, watching television, and listening to music. At some time between 3:00 and 4:00 a.m., Dorothy Nashoalook left the house in response to a call from a neighbor requesting help. After his wife had departed, Alva Nashoalook locked the door to his home and forcibly raped D.A. During Nashoalook's sexual assault of D.A., Nashoalook's wife returned to the home and, unable to open the door, began knocking. This enabled D.A. to escape Nashoalook; she fled to the front door and allowed her sister to enter.

The sexual assault was reported to Charles Dodson, Wainwright's public safety officer, at approximately 4:30 a.m. on April 12, 1981. After transporting D.A. to the clinic and conducting an on-scene investigation, Officer Dodson took Nashoalook into custody and transported him to the Wain-

wright public safety building. At 9:30 a.m., Dodson interviewed Nashoalook; the interview was tape recorded. Following a number of routine questions seeking information for booking purposes, Dodson advised Nashoalook of his *Miranda*[1] rights, and he ascertained that Nashoalook understood them. Dodson then attempted to determine if Nashoalook was willing to waive his rights and give a statement concerning the offense of the previous night. Nashoalook, however, became preoccupied with the fact that Dodson was recording the interview. Despite repeated assurances by Dodson that tape recording of interviews was standard procedure, Nashoalook continued to assert his apparent belief that Dodson wanted to record Nashoalook's description of the incident so that he could "spread it around" Wainwright. After several minutes of fruitless endeavor, Dodson terminated the interview, stating for the record that Nashoalook had refused to give a statement.

At about 1:30 p.m. that same day, Barrow public safety officer James Wood flew to Wainwright to take custody of Nashoalook. Before leaving Wainwright for Barrow, Officer Wood asked Officer Dodson if Nashoalook had told Dodson anything about the offense; Officer Dodson said, "Not much." Officer Wood did not ask whether Nashoalook had been advised of his *Miranda* rights or whether he had chosen to invoke them.

Nashoalook and Officer Wood arrived in Barrow at about 2:30 p.m.; Wood did not attempt to speak to Nashoalook during the flight from Wainwright. Upon arrival in Barrow Nashoalook was taken to the public safety office and placed in a jail cell. Later that afternoon he was taken to the hospital for a brief physical examination. At about 4:35 p.m., when Nashoalook returned from the hospital, Officer Wood conducted an interview of Nashoalook. The entire interview, which was conducted in English, was tape recorded. Wood commenced the interview by advising Nashoalook of his *Miranda* rights. Thereafter, Nashoalook indicated that he understood his rights and that he was willing to waive them. Nashoalook

proceeded to give Officer Wood a statement admitting that he had forced D.A. to have sexual intercourse with him against her will.

Prior to his trial, Nashoalook moved to suppress the confession that he had given to Officer Wood. Nashoalook argued, first, that it was improper for Officer Wood to interview him in Barrow after Nashoalook had previously elected to remain silent when questioned in Wainwright. Nashoalook maintained, second, that the waiver of his *Miranda* rights prior to being interviewed by Officer Wood in Barrow was invalid because it was not knowingly and intelligently given. The trial court denied Nashoalook's suppression motion. Nashoalook renews these arguments on appeal.

Nashoalook begins by asserting that, by refusing to give a statement when he was initially interviewed by Officer Dodson in Wainwright, he unequivocally invoked his fifth amendment right to remain silent. Relying on *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), Nashoalook alleges that his reinterrogation by Officer Wood in Barrow did not "scrupulously honor" his right to cut off questioning. Thus, Nashoalook insists that the reinterrogation violated his constitutional right to remain silent.

■ In considering this claim, we must view the record in the light most favorable to the state, since it was the prevailing party below. *Giacomazzi v. State*, 633 P.2d 218, 222–23 (Alaska 1981); *McGee v. State*, 614 P.2d 800, 805 n. 10 (Alaska 1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1485, 67 L.Ed.2d 617 (1981); *Stumbaugh v. State*, 599 P.2d 166, 172 (Alaska 1979). Viewing the record in this light, we find that the trial court did not commit error in ruling that no violation of Nashoalook's *Miranda* rights occurred.

A fair and common sense reading of the totality of the interview conducted by Officer Dodson in Wainwright on the morning of April 12 supports the conclusion that Nashoalook never actually invoked his fifth

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

amendment right to silence. The transcript indicates that Nashoalook's concern was focused almost entirely on the fact that Officer Dodson was trying to tape record the interview; Nashoalook believed that the recording was being made by Dodson so that Dodson could "spread it around" the village. Nashoalook never indicated any reluctance or unwillingness to discuss with Dodson the events of the prior night, except to the extent that a recording was being made and Nashoalook believed that the purpose of the recording was to embarrass him in the eyes of other residents of Wainwright. Indeed, a reading of the concluding portion of the interview indicates that it was terminated not because Nashoalook indicated his desire to exercise his right to silence, but rather because Dodson, after repeated, fruitless efforts to determine whether Nashoalook wanted to invoke his *Miranda* rights, simply desisted from any further effort and stated for the record his conclusion that Nashoalook had refused to make a statement.

■ Under these circumstances we do not believe it fair to conclude that Nashoalook's conduct evidenced an unambiguous intent "to cut off questioning entirely." *Vail v. State*, 599 P.2d 1371, 1378 (Alaska 1979). Nashoalook seemed only to want Dodson's tape recorder turned off, and he steadfastly refused to believe Dodson's assurances that recording interviews was standard procedure. The ambiguous circumstances surrounding Nashoalook's refusal to make a statement to Dodson do not, in our view, warrant the conclusion that further questioning was prohibited under the holding of *Michigan v. Mosley.* Both the Alaska Supreme Court and this court have recognized that ambiguous or equivocal responses following *Miranda* warnings do not suffice to constitute an assertion by the accused of his constitutional right to silence. *Mallott v. State,* 608 P.2d 737, 742 (Alaska 1980); *Vail v. State,* 599 P.2d at 1378; *Pierce v. State,* 627 P.2d 211, 217 & n. 7 (Alaska App.1981). We conclude that Nashoalook's ambiguous refusal to speak with Officer Dodson in Wainwright did not obligate the police to cease further interrogation.

■ We are, moreover, persuaded that, even if Nashoalook's refusal to speak with Officer Dodson in Wainwright could be interpreted as an effective assertion of his constitutional right to remain silent, Officer Wood's reinterview of Nashoalook in Barrow did not violate the requirement that Nashoalook's constitutional right to silence be scrupulously honored. *Michigan v. Mosley,* 423 U.S. at 104, 96 S.Ct. at 326–27, 46 L.Ed.2d at 321–22.

■ The mere fact that both interviewers were investigating the same crime does not necessarily mean that the second interview violated the rule of *Mosley.* *United States v. Finch,* 557 F.2d 1234 (8th Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (1977). A substantial period of time had elapsed since Nashoalook was initially questioned, and during that time Nashoalook had been transported from Wainwright to Barrow. It should be apparent that, since the second interview was conducted in Barrow, which is a significant distance from Wainwright, Nashoalook's fear that tape recordings of an interview might be spread around Wainwright would be diminished to a significant degree. Also important is the fact that Officer Wood commenced the Barrow interview with a full statement and explanation of Nashoalook's *Miranda* rights. *See People v. Davis,* 29 Cal.3d 814, 176 Cal.Rptr. 521, 633 P.2d 186, 191–92 (Cal.1981). There is absolutely no indication on the record that Officer Wood's reinterrogation was intended to wear down Nashoalook's resistance, nor, under the circumstances, is there any significant potential that the decision to reinterrogate was part of a coordinated effort by the police to obtain a statement from an otherwise unwilling person. *See, e.g., State v. Shaffer,* 96 Wis.2d 531, 292 N.W.2d 370, 375 (Wis.App.1980). *See also United States v. Finch,* 557 F.2d at 1236.

■ We next consider Nashoalook's claim that his waiver of the *Miranda* rights prior to his confession in Barrow was not knowingly and intelligently given, and that it was therefore involuntary. It is well estab-

lished that, in such cases, we must view the facts in the light most favorable to the state and form an independent conclusion as to the voluntariness of Nashoalook's *Miranda* waiver. *Giacomazzi v. State,* 633 P.2d at 222.[2] The basic question to be resolved is whether the state has met its "heavy burden" to show that Nashoalook knowingly and intelligently waived his *Miranda* rights. *Id. See also Miranda v. Arizona,* 381 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; *Tarnef v. State,* 512 P.2d 923, 934 (Alaska 1973).

■ After conducting an independent review in this case, we are persuaded that Nashoalook's *Miranda* waiver was knowingly and intelligently made. In arguing that his waiver was involuntary, Nashoalook relies primarily upon the limited extent of his formal education (8th grade), his difficulty with English, which is his second language, and his lack of prior experience with the criminal justice system. While these factors, coupled with the substance of Nashoalook's testimony at the suppression hearing, constitute strong evidence in his favor and render the decision in this case extremely close, they are offset by the manner in which Nashoalook's interviews were conducted and by the transcripts of the interviews themselves.

There is no significant dispute about the basic facts leading up to Nashoalook's confession.

On two separate occasions prior to his confession, Nashoalook was fully advised of his *Miranda* rights, and on both occasions he indicated that he understood the rights. When Nashoalook was advised of his rights for the second time, by Officer Wood in Barrow, Wood made a substantial effort to go beyond the mere recitation of the rights by providing further explanation in order to assure Nashoalook's understanding and to make it clear that Nashoalook did not feel obligated to refrain from exercising his rights. Nothing whatsoever transpired from the time of Nashoalook's arrest to the time of his confession suggesting that he had been subjected to any pressure or coercion—either overt or covert—to furnish a statement to the police. Despite the fact that Nashoalook's refusal to make any statement to Officer Dodson in Wainwright was not an unambiguous assertion of his constitutional right to remain silent, Nashoalook's reticence is still convincing proof of the fact that, at the very least, he was well aware that he was under no obligation to discuss his charges with the police.

Additional factors are also significant. Nashoalook, during his own testimony at the omnibus hearing, admitted that he understood at least some of the rights that had been explained to him. Specifically, he said he understood that he could refuse to make a statement, and he indicated at least a rudimentary understanding of the fact that an attorney was a person who could help him with his case. Although Nashoalook testified that he felt compelled to make a statement to Officer Wood about the offense, he was unable to provide any explanation as to the reasons for his feelings.

Perhaps the most convincing evidence of voluntariness, however, is in the transcript of Nashoalook's interview with Officer Wood. Nashoalook was definite in his statement that he understood his rights, and he was definite in his answers to almost all of the questions that were asked of him. The record provides little if any indication

---

**2.** As the Alaska Supreme Court stated:

Our own review of these questions when they are presented on appeal is necessarily bifurcated. First we must examine the trial court's factual findings concerning the events in question. In so doing, "we view the record in the light most favorable to upholding the trial court's ruling." *Stumbaugh v. State,* 599 P.2d 166, 172 (Alaska 1979). This comports with the clearly erroneous standard applied recently in making the related determi-nation of whether a confession was in fact made. *Troyer v. State,* 614 P.2d 313, 318 (Alaska 1980). But as we noted in that case, once we turn to the question of whether a waiver should be found in a given factual setting, "we have a duty to examine the entire record and make an independent determination." *Id.*

*Giacomazzi v. State,* 633 P.2d at 222. *See also Johnson v. State,* 631 P.2d 508 (Alaska App. 1981).

that Nashoalook experienced significant difficulty with the English language, either in terms of his ability to understand questions that were asked or his ability to give rational and coherent answers. Many of the questions asked of Nashoalook were not leading in nature and called for narrative responses. Although Nashoalook appears to have become more candid as the interview progressed, his statements throughout the interview demonstrate Nashoalook's basic awareness of the circumstances in which he found himself, as well as the ability to express his views in a reasonably coherent and logical manner.[3]

Based on a review of the record as a whole, we conclude that Nashoalook's limited formal education and his difficulty with the English language were not factors of sufficient significance to preclude him from entering into a knowing and intelligent waiver of his *Miranda* rights. *Peterson v. State,* 562 P.2d 1350, 1362–63 (Alaska 1977). *See also United States v. Fong,* 529 F.2d 55 (9th Cir.1975); *United States v. Mendoza,* 441 F.2d 1107 (9th Cir.1971); *State v. Sandoval,* 92 Idaho 853, 452 P.2d 350, 355 (Idaho 1969). Accordingly, we hold that the trial court did not commit error in refusing to suppress Nashoalook's confession.

Nashoalook's final contention is that his sentence is excessive. Superior Court Judge Jay Hodges sentenced Nashoalook to a term of ten years in jail, with five years suspended. Nashoalook's crime, first-degree sexual assault, constituted a class A felony at the time it was committed. Former AS 11.41.410(b). The offense was punishable by a maximum term of twenty years, with presumptive terms of ten and fifteen years for second and third felony offenders. In addition, a presumptive term of six years was prescribed for first felony offenders who used or possessed a firearm or caused serious physical injury during commission of the offense. Former AS 12.-55.125(c).

Nashoalook's primary contention is that his total sentence of ten years must be deemed excessive. Relying on our decision in *Austin v. State,* 627 P.2d 657 (Alaska App.1981), Nashoalook maintains that, since he would have been subject to a presumptive term of six years if his crime had been committed with a firearm or had involved serious physical injury, imposition of a ten-year term is unwarranted in the absence of extraordinary circumstances. Nashoalook maintains that no extraordinary circumstances have been established here.

█ Nashoalook's contention that the totality of his sentence must be considered in determining whether it is excessive is indisputably correct. *See, e.g., Andrews v. State,* 552 P.2d 150, 152 (Alaska 1976). This does not mean, however, that the portion of the defendant's sentence which is suspended must be considered as the equivalent of jail time that must actually be served. As we stated in *State v. Ahwinona,* 635 P.2d 488, 490 (Alaska App.1981), although we must consider the total length of the sentence imposed, "the amount of time the defendant has to serve is also a relevant consideration." By the same token, we have recently made it clear that, in applying our holding in *Austin v. State,* our primary focus will be on the actual sentence that the defendant must serve, and not on the period of time that is suspended. *Tazruk v. State,* 655 P.2d 788 (Alaska App.1982).

Here, we believe that Nashoalook received a sentence that is more favorable than a six-year presumptive term would have been. Consequently, we find no violation of *Austin.* Furthermore, we conclude that in light of the severity of the offense for which Nashoalook was convicted the sentence he received, when viewed in its entirety, is not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.

---

**3.** Nashoalook's understanding of his situation and his basic grasp of the English language are also evidenced by his ability to testify at his omnibus hearing and at his trial without apparent difficulty. Although Nashoalook's wife was present at the trial to act as an interpreter, her services were apparently never required.