Ilir ALILI, Appellant,

v.

STATE of Alaska, Appellee.

No. 7187.

Court of Appeals of Alaska.

Oct. 21, 1983.

John Michael Eberhart, Anchorage, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Ilir Alili was convicted of possession of cocaine. Former AS 17.10.010. He challenges his conviction on two grounds. He contends that the trial court erred in failing

to dismiss the indictment, and in refusing to suppress his statement to police. We reverse.

## FACTS

Bethel Police Officer George Wright received information from a known drug dealer that four men, including Ilir Alili, had brought a substantial quantity of heroin and cocaine into Bethel. Officer Wright was told that the drugs were being possessed by Alili and Islam Pinjoli at the Bethel Native Corporation apartments, numbers 17 and 25. The informant and another person were recruited to try to purchase drugs from the alleged possessors. They went to apartment 25 first and found Abedin Karameti and Malik Dema, who would not sell them any drugs. They then went to apartment 17 where Alili and Pinjoli appeared to be living. Alili and Pinjoli would not sell any drugs to them, but Alili stated that maybe he could "help out" in a day or two.

The next afternoon the manager of the apartment building went to apartment 17 to try to collect unpaid rent. Finding no one there, he went inside to look for something that would tell him who was living there. He found a set of scales with white powder on them. He summoned the police. After the police arrived he continued his search and found an envelope bearing the name Mefail Kadrijoski, and containing "little cylinder like things" with white powder inside. The police officer obtained a search warrant which was served that night. In apartment 17 fourteen grams of cocaine were found under the sink, five ounces were found under an exhaust fan, and thirty grams were found in the envelope previously found by the manager.

Alili, Pinjoli and Karameti were arrested. Alili was advised of his *Miranda* rights and asked if he would waive them. Alili would not sign a waiver, but did proceed to talk with police. Alili was indicted and his mo-

tion to suppress his statement was denied. Alili was convicted and this appeal followed.

## THE INDICTMENT

█ Alili argues that the trial court should have dismissed the indictment because the prosecutor failed to present exculpatory evidence to the grand jury. *Frink v. State,* 597 P.2d 154, 164 (Alaska 1979) (the prosecutor has a duty to present evidence to the grand jury which will tend to negate guilt); Alaska R.Crim.P. 6(q). Alili's argument is based on the fact that the envelope bearing the name Mefail Kadrijoski was not presented to the grand jury.

The cocaine found in the envelope was not the only cocaine found in the apartment. Therefore, even if the cocaine did not belong to Alili because his name was not on the envelope, that does not tend to negate Alili's guilt of possession of cocaine. Even assuming that the evidence was exculpatory, we cannot say that the prosecutor failed in his duty to present it. Officer Wright testified to the grand jury about the envelope. He stated that another Yugoslavian person's name was on it: "it wasn't the renter." There was other evidence presented to the grand jury to try to establish that Alili was one of the renters of the apartment. This included introduction of his possessions, including clothes, a gun and a camera, found in the apartment. Taken together we find that the grand jury was informed of the existence of the envelope and the fact that a name other than Alili's was written on it. Therefore, the prosecutor did not breach his duty to present exculpatory evidence to the grand jury and accordingly the trial court did not err in refusing to dismiss the indictment.

## ALILI'S STATEMENT TO POLICE

█ Alili argues that the totality of the circumstances demonstrate that he did not understand his rights[1] and did not

---

1. In *Miranda v. United States,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), the court held:

Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has

knowingly and intelligently waive them. The trial court's findings of fact will be reversed on appeal only if clearly erroneous. *Van Cleve v. State,* 649 P.2d 972, 976 (Alaska App.1982). In accordance with this standard the appellate court must view the factual findings in the light most favorable to upholding the trial court's findings. *Giacomazzi v. State,* 633 P.2d 218, 222 (Alaska 1981). To determine whether the confession was voluntary, however, this court must make an independent determination based on the record. *Van Cleve,* 649 P.2d at 976. Voluntariness is determined by the "totality of the circumstances surrounding the statement." *Mallott v. State,* 608 P.2d 737, 741–42 (Alaska 1980); *Sheakley v. State,* 644 P.2d 864, 868 (Alaska App.1982). Addressing the issue of waiver of the sixth amendment right to counsel, the court in *Giacomazzi* said that the court "must 'indulge in every reasonable presumption against waiver.'" 633 P.2d at 222 (quoting *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 439–40 (1977)). Under this standard of review we find no assurances in the record that Alili understood his rights or knowingly and voluntarily waived them.

■ Alili is an Albanian who immigrated to the United States from Yugoslavia in 1974. English is his second language. At the police interview he stated that he read English but he did not understand some "professional words." Police Chief Varnell conducted the interrogation and noted that Alili did not read English well. Varnell explained Alili's rights to him:

V: I'm gonna read something, O.K.? So, since you don't read too well, yourself I'm gonna read it out loud. If you have any questions, you ask me. You have the right to remain silent. Anything you say can and will be used [against] you in a court of law. You have the right to talk to a lawyer, and have him present with you, if you wish, while you're being questioned. If you cannot afford to hire a

lawyer, one can and will be appointed to represent you, if you wish, before any questioning, and you can decide at any time to exercise your rights and not answer any questions or make any statements. Now in America, I don't know how it is in Albania, but in America the police are required to read this to people before we talk to them, if they're under arrest.

A: Yes.

V: And, so I've read it to you and it keeps me from getting in trouble, O.K.?

A: Yes.

V: If you will talk to me, and after you have been read this, if you feel that you understand it, I'd like to have you agree to talk to me by signing here, stating that you will talk to me. O.K.?

A: Well, uh . . .

V: Basically what it means is that I understand what you, I have a right to remain silent, and I, but I agree to answer questions. In other words I waive my fifth amendment rights and I agree to talk to you right now.

A: Uh, huh.

V: You, you also reserve the right to talk any time you want to, this doesn't mean you have to talk to me. We don't use torture techniques in the United States so you know, any time, anything you don't want to say, just . . .

A: I don't know if, if, only thing I know in America, sometimes you write the wrong things, you don't understand, you, you sign them [Indiscernible words].

V: Oh, I see what you mean. Would you be willing to talk to me and you don't want to sign the paper, is that what you mean? You just don't like signing things?

A: Well, uh, that's all I know about the United States.

V: Well, you don't have to sign that. If you want to talk to me, talk to me . . .

a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided

the waiver is made voluntarily, knowingly and intelligently.

A: Well, I talk but, I don't know if I [indiscernible word] it won't mean nothing this, if I sign.

V: If it'll make you feel good, don't sign it. It's totally up to you. If you verbally agree to talk to me, fine, we can, you know, we're gentlemen, we can just ... take your word.

Alili was never asked if he understood his rights; and he never indicated that he understood. He was reluctant to sign the waiver. He appeared to be afraid of signing something that he did not understand which possibly would be used against him later. This is distinguishable from the situation in *Nashoalook v. State,* 663 P.2d 975 (Alaska App.1983), where the defendant would not talk into a tape recording machine at an interview conducted in the village where his crime had been committed. Nashoalook feared that police would use the recording for the ulterior purpose of spreading information about his crime around the village. Alili's fear was not a fear of being humiliated within his community, but rather was a fear which the *Miranda* warning was designed to protect. *See Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966). In addition it appears that Chief Varnell explained Alili's rights in a manner which diminished their significance, and after the explanation did not ask if Alili wanted to talk to him, he simply began the questioning to which Alili made several incriminating responses.

Viewing the totality of the circumstances, we hold that the trial court's finding that Alili knew and understood his rights was clearly erroneous. The state failed to meet its heavy burden of demonstrating waiver. *See Miranda v. United States,* 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; *Giacomazzi v. State,* 633 P.2d at 222. The trial court erred in failing to suppress Alili's statements.[2]

The judgment of the superior court is REVERSED.

---

2. Because we have decided that Alili's statement to the police must be suppressed we need not address his argument that the prosecutor failed to present to the grand jury exculpatory statements he made to the police. It is also unnecessary for us to address Alili's contention that his statements were improperly induced by promises of leniency.