Wilton E. TONEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3357.

Court of Appeals of Alaska.

May 15, 1992.

Daniel Weber, Anchorage, for appellant.

Shelley K. Chaffin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

**16**

## OPINION

MANNHEIMER, Judge.

At a jury trial in the Anchorage superior court, Wilton E. Toney was found guilty of three counts of third-degree misconduct involving a controlled substance (two counts of sale of cocaine and one count of possession of cocaine with intent to deliver), AS 11.71.030(a)(1). On appeal, Toney challenges three evidentiary rulings made by the superior court. We affirm.

On July 21, 1988, Anchorage Police Officer Michael Hill, working undercover, was introduced to a man named Burnis "Butch" Sims. Hill told Sims that he wished to buy cocaine. Sims gave Hill his telephone number and told Hill to call him. The next day, Hill telephoned Sims and asked if Sims could sell him any cocaine. Sims told Hill that he would not know until late in the afternoon whether he could sell him cocaine, because "Toney" was not available until after 4:00 p.m.

Hill eventually purchased cocaine from Sims on July 28. One week later, on August 5, Hill contacted Sims again and asked to purchase more cocaine. Sims told Hill to meet him at a Wendy's restaurant. Hill arrived at Wendy's just as Sims was getting ready to leave; Sims told Hill that he had arrived just in time, but that they had to drive to a 7-eleven instead. Hill and Sims drove separately to the 7-eleven, and then Sims got into Hill's car. Sims told Hill that he did not have the cocaine with him, but that it would arrive shortly. Sims also told Hill that he always did business with the same supplier, and that this supplier had recently delivered some "really good stuff".

A few minutes later, a blue and gray Dodge Ram Charger parked next to Sims's truck, and Sims told Hill, "Here he is now." Sims got out of Hill's car and climbed into the passenger door of the Ram Charger. Sims remained in the truck for a few minutes, and then he returned to Hill's vehicle with two ounces of cocaine which he had bought from "[his] guy". Hill and Sims then went to Sims's apartment, where Sims cut the cocaine into half an ounce for Hill.

At the same time, another police officer, Officer Gaither, had been watching the transaction between Hill and Sims at the 7-eleven in hopes of observing a third participant to the transaction. The conversation between Hill and Sims was being transmitted and recorded. Gaither was informed to watch for a Dodge Ram-type vehicle. Gaither watched the blue and gray Ram Charger drive into the parking lot of the 7-eleven. When the Ram Charger left, Gaither followed until it stopped in the parking lot of a business complex. There, he saw Wilton Toney get out of the truck.

While Hill and Sims were talking at the apartment, Sims assured Hill that he (Sims) could call his drug supplier at any time of the day or night and get delivery of more cocaine. Hill commented that this supplier must not get any sleep, and Sims replied, "You know, I asked him the other day, I said 'Toney, when do you get some sleep?', and he said, 'When people stop giving me money.'"

On August 11, 1988, Hill called Sims, asking to buy one ounce of cocaine. Sims told Hill that he would call him back with details as soon as his "contact" called him. Apparently, Sims's contact called, because Sims then arranged to meet Hill by the Burger King restaurant on Penland Parkway. Hill met Sims, who was with a woman, and gave him $1,050. Again, Sims did not have the cocaine with him; he drove across the street and went into a record store. Toney, driving a white Corvette, was parked in front of the store. Toney and Sims conversed, and then Toney went to his Corvette to retrieve something. Upon Toney's return, Toney and Sims walked back to Sims's car, where they appeared to exchange items. Toney appeared to be counting money. Sims returned to Hill with the cocaine.

On September 14, 1988, Officers Ellis and Cress, driving an unmarked police car, were following Toney in his Ram Charger. They called another officer, Officer Nelson, who was driving a marked patrol car, and asked her to pull Toney over. With Officers Ellis and Cress observing, Officer Nel-

son pulled Toney over for a probation violation.

After Toney had identified himself by furnishing his driver's license, Officer Cress placed Toney under arrest. Officer Nelson took Toney to her patrol car, where she patted him down. During this patdown, Officer Nelson took several items from Toney's pockets and placed them on top of her patrol car.

Officer Nelson alerted Officer Cress that she had found what appeared to be cocaine. Cress turned around and saw a clear plastic bag in Nelson's hand, which Nelson then placed on top of her patrol car. Later, Nelson marked the items on top of her car to indicate where she had found them.

A search of Toney's car uncovered a red sock on the floor by the driver's seat; this sock contained $72,174 in cash. Toney's car also contained a green box which held $539 and twenty-nine grams of cocaine.

Toney was charged with two counts of third-degree misconduct involving a controlled substance for his complicity in the two sales of cocaine between Sims and Hill. The third count, possession of cocaine with intent to deliver, was based on Toney's possession of cocaine at the time of his arrest. The jury found Toney guilty of all three counts.

Before Toney's trial commenced, the State filed a memorandum addressing evidentiary issues that would likely come up at trial. One of these issues was the admissibility of Sims's statements to Officer Hill during their various conversations and drug transactions. Sims was not going to testify for the government. The prosecution contended, however, that Sims's statements identifying Toney as his supplier and his statements attesting to Toney's reliability and the quality of Toney's cocaine were admissible under Alaska Evidence Rule 801(d)(2)(E), the co-conspirator exception to the hearsay rule.

The defense filed no responding memorandum. However, just before the prosecution's opening statement, Toney's attorney raised the issue of Sims's out-of-court statements. The defense attorney conceded that Sims's utterances had been made during the course of a conspiracy to sell cocaine, but he argued that Sims's identification of Toney as the source of the cocaine did not further the conspiracy in any manner; thus, the defense attorney contended, all specific references to Toney's name should be deleted from Sims's statements. The prosecutor responded by making a detailed offer of proof concerning Sims's various utterances and why they should be considered co-conspirator statements. At the conclusion of this offer of proof, the defense attorney modified his argument slightly: he asserted that, since the first drug sale had not occurred until August 5, Sims's statements on July 22 and July 28 were not made during the course of a conspiracy.

Superior Court Judge Mark C. Rowland ruled that Sims's statements were admissible as co-conspirator statements. Judge Rowland concluded first, that there was sufficient evidence, apart from Sims's utterances, to establish the existence of a conspiracy; second, that Sims's statements were made in furtherance of that conspiracy, and third, that these statements carried sufficient indicia of reliability to establish their trustworthiness.[1][2]

---

**1.** We note that several of Sims's out-of-court statements were apparently not introduced for the truth of the matters asserted in those statements. They therefore were not hearsay under Alaska Evidence Rule 801(c); see the authorities cited in the Commentary to Evidence Rule 801(c). Because these statements were not hearsay, they would have been admissible without reliance on the co-conspirator exception.

**2.** In *Hawley v. State,* 614 P.2d 1349, 1358–59 (Alaska 1980), the Alaska Supreme Court held that co-conspirator statements must be accompanied by "indicia of reliability" to satisfy the confrontation clause of the Sixth Amendment. *Hawley* relied upon the Ninth Circuit's decision in *United States v. Snow,* 521 F.2d 730, 734–36 (9th Cir.1975), which in turn relied upon the plurality opinion in *Dutton v. Evans,* 400 U.S. 74, 88–89; 91 S.Ct. 210, 219; 27 L.Ed.2d 213, 227 (1970).

Since *Hawley,* the United States Supreme Court has squarely held that the Sixth Amendment does not require proof of separate indicia of reliability for a co-conspirator statement or for any other hearsay statement that "falls within a firmly rooted hearsay exception". *Bourjaily v. United States,* 483 U.S. 171, 181–84; 107

On appeal, Toney challenges the superior court's finding that there was sufficient independent evidence to establish that Sims and Toney conspired to engage in criminal activities. *Arnold v. State*, 751 P.2d 494, 502 (Alaska App.1988); *Stumpf v. State*, 749 P.2d 880, 889 (Alaska App. 1988). To obtain reversal of this finding of fact, Toney must demonstrate that Judge Rowland's conclusion was clearly erroneous. *Stumpf*, 749 P.2d at 890.

The evidence at trial showed that, twice when Sims sold cocaine to Officer Hill, Sims arranged for Hill to meet him at a particular location, Toney drove to that same location, Sims met with Toney, and then Sims immediately returned to Hill with the cocaine. This evidence is sufficient to support Judge Rowland's finding that Sims and Toney were working together.

In his brief, Toney points out various weaknesses in the State's identification of Toney as the driver of the Dodge truck on August 5; Toney also contends that a later police search of his residence failed to uncover any evidence specifically linking Toney to Sims. However, while the evidence may not uniformly support a finding of conspiracy, we are constrained to view the evidence in the light most favorable to upholding the trial court's decision. *Nashoalook v. State*, 663 P.2d 975, 977 (Alaska App.1983). Judge Rowland's finding of a conspiracy was not clearly erroneous.

Toney also points out that Judge Rowland's ruling was based on the prosecution's pre-trial offer of proof, not on actual evidence admitted at trial. However, Toney never renewed his objection to this evidence, nor did he ever indicate to Judge Rowland that he believed the trial evidence had deviated materially from the prosecutor's offer of proof.

We therefore affirm Judge Rowland's finding that a conspiracy existed. Toney has not renewed the other objections made at trial. Consequently, we uphold the superior court's decision to admit Sims's out-of-court statements.

Toney next challenges the superior court's decision to admit the more than $72,000 in cash found in the sock in Toney's vehicle. Toney argues that this money was completely irrelevant to the charges against him, and that this evidence was quite prejudicial because it could lead the jury to infer that Toney had engaged in many drug transactions other than the ones charged. Judge Rowland ruled that the money was probative because it was found in Toney's vehicle and because the money itself tested positive for cocaine. Judge Rowland further ruled that the probative value of this evidence outweighed its potential for unfair prejudice.

The question on appeal is whether Judge Rowland abused his discretion in admitting this evidence. *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980). Toney has not shown an abuse of discretion. Money found in a defendant's possession was admitted under similar circumstances in *Hawley*. The defendant in *Hawley* was charged with sale and attempted sale of drugs; when the defendant was arrested, more than $1,000 in cash was found in his possession, but this money could not be linked to the particular transactions for which the defendant was charged. *Id.* at 1361. Upholding the trial court's decision to admit the money, the supreme court reasoned that Hawley's possession of such a large amount of cash was relevant because it tended to corroborate the prosecution's assertion that he was a drug trafficker. *Id.*

Under similar reasoning, we find that Judge Rowland did not abuse his discretion when he concluded that the probative force of the $72,000 cash outweighed its potential for unfair prejudice. We note that Toney was charged with both sale of cocaine and possession of cocaine with intent to deliver. Toney's possession of a large amount of cash, money dusted with cocaine, was pro-

S.Ct. 2775, 2782–83; 97 L.Ed.2d 144 (1987). *See also United States v. Paris*, 827 F.2d 395, 400–01 (9th Cir.1987), recognizing that *Bourjaily* superseded former Ninth Circuit law on this subject.

Because the issue is not raised here, we need not decide whether any different rule is required under Article I, § 11 of the Alaska Constitution.

bative of what he intended to do with the cocaine found in his possession at the time of his arrest. And, as the supreme court recognized in *Hawley*, Toney's possession of this money was also probative of Toney's identity as Sims's supplier.

Toney's final contention on appeal is that the State did not present a sufficient evidentiary foundation to support the admission of the cocaine found in Toney's possession at the time of his arrest. As noted above, Officer Nelson was the officer who actually seized the cocaine from Toney during a pat-down search at the time of Toney's arrest. Officer Nelson was out of state at the time of Toney's trial and did not testify.

Officer Cress, who also participated in Toney's arrest, testified that Officer Nelson was conducting the pat-down of Toney when she said, "I found some cocaine." This remark caused Cress to turn and look toward Nelson and Toney; he observed Nelson holding a clear plastic bag in her hand. The bag appeared to contain cocaine. Cress observed Nelson place the bag on the roof of her patrol car. Cress later retrieved the bag from the top of Nelson's patrol car and saved it as evidence.

Toney objected to the admission of this bag, contending that, in the absence of testimony from Officer Nelson, there was insufficient evidence to establish "chain of custody"—that is, to establish the fact that the bag the prosecution was offering into evidence had indeed been discovered during the pat-down search of Toney.

Judge Rowland found that Officer Nelson's exclamation when she found cocaine during the pat-down search of Toney was admissible as a statement of present sense impression under Evidence Rule 803(1). Based on Officer Cress's testimony (including his account of Nelson's out-of-court statement), Judge Rowland ruled that the State had established, to a reasonable cer-

tainty, that the bag of cocaine offered into evidence was the bag discovered on Toney's person during the pat-down search. Evidence Rule 901(a).

On appeal, Toney does not question Judge Rowland's ruling that Officer Cress could testify to Officer Nelson's statement under Evidence Rule 803(1). Toney argues, however, that even with Officer Nelson's statement there was insufficient evidence to establish a proper foundation for the bag of cocaine under Evidence Rule 901(a). He contends that, absent direct testimony from Nelson, the bag could not be identified with reasonable certainty.

We reject Toney's argument. Officer Cress had just arrested Toney and had directed Officer Nelson to search him. In the middle of this search, Nelson said aloud that she had found cocaine. Nelson's statement was admitted under Evidence Rule 803(1) for the truth of the matter asserted. Cress turned and observed Nelson holding a bag; he then saw her place the bag on the roof of her patrol car. A few minutes later, Cress retrieved this bag from the roof of the patrol car and placed it into police evidence. While the bag was not in Cress's view at all times, no other circumstances cast doubt on the inference that the bag Cress retrieved from the roof of Nelson's patrol car was the same one Nelson had discovered during the pat-down search of Toney. Judge Rowland did not abuse his discretion when he ruled that the State had satisfied the foundational requirement of Evidence Rule 901(a).

The judgement of the superior court is AFFIRMED.