Ceola HOUSTON–HULT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3920.

Court of Appeals of Alaska.

Dec. 31, 1992.

Margi Mock, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Shelley K. Chaffin, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Ceola Houston–Hult was convicted by a jury of five counts of misconduct involving a controlled substance in the second degree (sale of dilaudid) and three counts of misconduct involving a controlled substance in the third degree (sale of cocaine). Houston–Hult appeals, contending that Superior Court Judge Rene J. Gonzalez erred in denying her motion for a judgment of acquittal. We affirm.

Houston–Hult's convictions stem from her involvement in a series of controlled drug sales to an undercover informant who worked under the supervision of Investigator Wilber Earl Hooks of the Anchorage Police Department (APD). At trial, Hooks testified concerning his supervision of the informant during the transactions, the manner in which he took custody of the drugs from the informant, and the steps he took in submitting the drugs to the evidence room, which forwarded them to the Alaska State Crime Detection Laboratory in Anchorage for testing.

Because Houston–Hult's sales occurred on different occasions, the drugs she was alleged to have sold were sent to the crime lab on different days and were eventually tested by three different laboratory technicians. The three technicians testified at Houston–Hult's trial about their analysis of the substances submitted to them, each identifying the substances as either dilaudid or cocaine. Houston–Hult offered no contemporaneous objection to this testimony.

The state did not seek to admit into evidence the controlled substances that Houston–Hult was charged with selling, electing to rely on the testimony of the three lab technicians to establish that the substances were cocaine and dilaudid, as alleged. After the close of evidence at trial, Houston–Hult moved to strike the testimony of the lab technicians and requested a judgment of acquittal, contending that the state had failed to present a sufficient chain of custody to establish that the substances tested by the technicians were the same substances that Hooks had obtained from the informant after each transaction. Judge Gonzalez denied both motions, finding that Houston–Hult had failed to preserve the chain-of-custody issue by neglecting to make a contemporaneous objection to the lab technicians' testimony identifying the substances they tested.

On appeal, Houston–Hult contends that Judge Gonzalez erred in failing to grant her motion for a judgment of acquittal, again arguing that the evidence as to chain of custody was insufficient. To decide whether the trial court has properly denied a motion for judgment of acquittal based on insufficiency of evidence, this court must consider the evidence presented at trial and all of the inferences arising therefrom in the light most favorable to the state. Viewing the evidence in this manner, we must determine whether a fair-minded juror exercising reasonable judgment could conclude that the state met its burden of proving guilt beyond a reasonable doubt. *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981); *Deal v. State*, 657 P.2d 404, 405 (Alaska App.1983).

In the present case, the trial testimony established that Houston–Hult repeatedly sold substances she represented to be di-

laudid and cocaine to a police informant, who immediately turned the substances over to Hooks. The informant testified at trial, describing the various transactions. Tape recordings of some of the transactions were also admitted.

Hooks testified that, after each sale, he placed the substances he took from the informant into an evidence bag, assigned a case number to the evidence, and deposited it into an APD evidence locker, together with a request for testing by the state crime lab. According to Hooks, once evidence is secured in an APD evidence locker, the only people who have access to it are APD evidence technicians, whose job it is to personally deliver the evidence to the crime lab.

The three technicians from the state crime lab described the normal procedures followed by the lab. According to their testimony, all substances brought to the lab by APD for testing are personally delivered to the crime lab's evidence room, either directly by the officers who seized the substances or by evidence custodians. The evidence room is a locked area, equipped with an alarm; the only people who have access to it are three evidence custodians, who have all been subjected to background checks for security purposes. All substances delivered to the evidence room are received by one of the three evidence custodians employed by the lab.

Crime-lab technicians later receive assignments to test substances that have been delivered to the evidence room. Upon receiving an assignment in a given case, the technician goes to the evidence room, obtains the evidence in the assigned case from one of the evidence custodians, affixes a crime lab number to it, and proceeds to conduct whatever tests are appropriate.

With reference to the evidence submitted for testing in Houston–Hult's case, the three technicians testified that, at various times, they received evidence with APD

numbers corresponding to those testified to by Investigator Hooks. Chemical analysis confirmed each item of evidence to be the substance Houston–Hult had represented it to be at the time of the corresponding sale—either dilaudid or cocaine.[1]

We conclude that the totality of this evidence, when viewed in the light most favorable to the state, is sufficient to allow a reasonable juror to find that the state met its burden of proving Houston–Hult's guilt.

Houston–Hult nevertheless urges us to hold that the evidence must be deemed insufficient because, in her view, the state failed to prove a chain of custody sufficient to meet the "reasonable certainty" standard contained in A.R.E. 901(a):

> (a) Whenever the prosecution in a criminal trial offers (1) real evidence which is of such a nature as not to be readily identifiable, or as to be susceptible to adulteration, contamination, modification, tampering, or other changes in form attributable to accident, carelessness, error or fraud, or (2) testimony describing real evidence of the type set forth in (1) if the information on which the description is based was acquired while the evidence was in the custody or control of the prosecution, the prosecution must first demonstrate as a matter of reasonable certainty that the evidence is at the time of trial or was at the time it was observed properly identified and free of the possible taints identified by this paragraph.

Relying on this rule, Houston–Hult criticizes the prosecution for failing to call all of the witnesses who handled the drugs in her case prior to testing and for failing to eliminate all possibility of mishandling. Houston–Hult argues:

> [N]o one testified about who specifically handled these substances between when Hooks placed them in the evidence locker and when the criminalists received some drugs to analyze. The absence of any

---

**1.** The technicians also testified that they were able to visually identify purported dilaudid tablets as being consistent in markings and size with commercially-produced dilaudid tablets.

such testimony left a crucial gap in the chain of custody, making it plausible that the drugs analyzed at the lab were not the same substances that Hooks submitted for analysis. The state's chain of custody testimony did not rule out the possibility that the samples were tampered with after Hooks placed them in the evidence locker or the possibility that the tags got mixed up....

We find Houston–Hult's argument unpersuasive for three reasons.

 First, we note that A.R.E. 901(a) is meant to provide guidance for admission of evidence; the rule does not purport to set standards for gauging the sufficiency of evidence that has been admitted. On appeal Houston–Hult has elected not to challenge the trial court's denial of her motion to strike the testimony of the three crime-lab technicians who identified the drugs that Hooks submitted for testing; we must thus deem their testimony properly admitted for purposes of determining the sufficiency of the evidence.[2]

 Second, we agree with the trial court's finding that Houston–Hult failed to make a timely chain-of-custody objection at trial. At trial, Houston–Hult's counsel claimed that he did not voice a contemporaneous objection to the testimony offered by the state's crime-lab technicians because he assumed that the state would later call other witnesses to shore up its case on the chain-of-custody issue. Judge Gonzalez nevertheless found that the absence of contemporaneous chain-of-custody objections precluded Houston–Hult from later raising the issue in the form of a motion to strike and a motion for a judgment of acquittal.

On appeal, Houston–Hult argues that Judge Gonzalez was unduly harsh in requiring a contemporaneous objection. Houston–Hult contends that, when the lab technicians testified, her trial counsel could justifiably have expected that the state would formally offer the disputed drugs into evidence at a later point in the trial and would, at that time, present further chain-of-custody evidence to support its admission. Claiming surprise at the state's apparently last-minute decision to forego admission of the drugs, Houston–Hult argues that she should have been afforded the opportunity to raise the chain-of-custody issue in the manner that she did.

Houston–Hult's argument against waiver might have considerable merit had she asserted her chain-of-custody objection at the earliest reasonable opportunity after learning of the state's decision not to offer the disputed drugs into evidence. But she did not. The record reveals that, when the

**2.** Houston–Hult's failure to raise as a separate claim the issue of the trial court's denial of her motion to strike is not a mere technicality. An appellate claim of insufficient evidence requires the reviewing court to evaluate the totality of the evidence before the jury. Thus, the court is in effect placed in the position of presuming that all of the evidence actually before the jury was properly admitted. Allowing the admissibility of evidence to be challenged within the framework of an appellate claim of insufficient evidence would have serious procedural implications.

For example, assuming Houston–Hult had properly preserved the issue of the admissibility of the lab technicians' testimony by raising a separate point on appeal challenging the trial court's denial of her motion to strike, and assuming further that Houston–Hult had prevailed on the issue, the normal remedy would have been a reversal, coupled with a remand for retrial. Upon retrial, the state would have been afforded the opportunity to present a more complete chain of custody. In contrast, if we were to entertain and decide Houston–Hult's chain-of-custody argument in the context of the point on appeal she now raises—the sufficiency of evidence presented against her at trial—then the mandatory remedy, assuming her argument prevailed, would be a reversal with instructions to the trial court to enter a judgment of acquittal. The state would be foreclosed from seeking a retrial.

We see no justification for allowing litigants to parlay garden-variety evidentiary errors into outright acquittals by tactically bypassing established procedures for asserting claims of error on appeal. We do not suggest that, in the present case, Houston–Hult deliberately refrained from challenging the trial court's denial of her motion to strike in order to gain a tactical advantage. Our only point is that the need to discourage such tactical maneuvering precludes overlooking, as a mere technicality, Houston–Hult's failure to separately challenge the trial court's denial of her motion to strike.

state rested its case-in-chief without attempting to admit the drugs allegedly sold by Houston–Hult, the trial judge, evidently concerned at the possibility of an oversight, inquired as to whether the state wanted the drugs admitted. The state then confirmed that it would not formally seek admission of the drugs.

Houston–Hult's trial counsel raised no objection to the state's decision at that time,[3] nor did counsel then move to strike the testimony of the lab technicians or request entry of a judgment of acquittal. Instead, counsel expressly reserved, until the end of trial, Houston–Hult's right to move for a judgment of acquittal. Counsel then proceeded to call the first defense witness.

Not until the following day, after announcing that the defense had no further witnesses, did counsel request acquittal based on the state's failure to prove chain of custody. Under these circumstances, we conclude that Judge Gonzalez did not abuse his discretion in finding that Houston–Hult had failed to preserve the issue.

■ ■ Third, even if Houston–Hult had preserved the chain-of-custody issue below and had properly raised it on appeal, we would be inclined to find that the state's evidence at trial was at least minimally adequate to meet the requirements of A.R.E. 901(a). Contrary to the argument advanced by Houston–Hult, A.R.E. 901(a) does not require the state, for purposes of establishing a chain of custody, to call as witnesses all persons who exercised custody over a controlled substance; nor does A.R.E. 901(a) require the state to rule out all possibility of tampering.

The commentary to A.R.E. 901(a) notes that the rule was not meant to "hold the

Government to an onerous standard of proof, but merely to the same reasonable requirement that it is used to fulfilling." Alaska Rules of Court, *Evidence Rules Commentary*, A.R.E. 901(a) at 497 (ed., 1992–93). In particular, the commentary cites with approval the Alaska Supreme Court's decision in *Wright v. State*, 501 P.2d 1360, 1372 (Alaska 1972). *Commentary* at 497. In *Wright*, a case involving a chain-of-custody issue quite similar to Houston–Hult's, the supreme court upheld admission of the drugs allegedly sold by the defendant, stating in relevant part:

> The rule is well settled that in setting up a chain of evidence, the prosecution need not call upon every person who had an opportunity to come in contact with the evidence sought to be admitted. Similarly, every conceivable possibility of tampering need not be eliminated. As the court held in *Gallego v. United States* [, 276 F.2d 914, 917 (9th Cir. 1960) ]:
>
> > Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties.

*Id.* at 1372 (footnote omitted). *See also Toney v. State*, 833 P.2d 15, 19 (Alaska App.1992).

Here, as in *Wright*, there is no evidence suggesting any irregularity in the handling of the disputed evidence. Although the state could have made a more thorough chain-of-custody showing, and although the trial court, upon a timely defense request, would certainly have had discretion to demand a more substantial showing, we are aware of no reason why the presumption of

---

**3.** Houston–Hult relies on *G.E.G. v. State*, 417 So.2d 975 (Fla.1982), for the proposition that, in controlled substance prosecutions, the state should be required to introduce the substance into evidence when it is available. Houston–Hult urges us to adopt this position. We need not consider the issue, however, since Houston–Hult has failed to preserve it. As the Florida Supreme Court itself recognized, the require-

ment of introducing the controlled substance should apply, if at all, only when a defendant objects to the state's nonintroduction of the substance. *Id.* at 977. Here, Houston–Hult failed to object to the state's decision to forego introducing the drugs that she allegedly sold. Accordingly, even if the rule in *G.E.G.* were adopted in Alaska, it would not apply to Houston–Hult's case.

regularity should not apply here, and see no basis for distinguishing this case from *Wright*.

In summary, we conclude that the superior court did not err in denying Houston–Hult's motion for judgment of acquittal.

The judgment is AFFIRMED.