**Jerry W. LANGEVIN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10510.

Court of Appeals of Alaska.

June 3, 2011.

Jane B. Martinez, Anchorage (under contract with the Public Defender Agency), and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Ben Seekins, Assistant District Attorney, Fairbanks, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Jerry W. Langevin appeals his conviction for driving under the influence. This appeal presents three questions concerning the *corpus delicti* rule—the doctrine that a criminal conviction can not rest solely on the defendant's confession.

The first question is an issue of law: whether, under Alaska law, the trial judge or the jury is the one who decides whether the government's evidence satisfies the *corpus delicti* rule. The second question is case-specific: whether, given the evidence presented at Langevin's trial, the State satisfied the *corpus delicti* requirement. The third question is again a question of law: when the State fails to satisfy the *corpus delicti* rule, but when the State's evidence, taken as a whole (*i.e.,* including the defendant's confession), is sufficient to survive a motion for a judgement of acquittal, is the defendant's remedy outright dismissal of the criminal charge, or is it a retrial?

For the reasons explained in this opinion and in this Court's prior decision in *Dodds v. State*, 997 P.2d 536 (Alaska App.2000), we conclude that the issue of *corpus delicti* is a question for the trial judge.

In addition, for the reasons explained here, we conclude that the State's evidence in Langevin's case was not sufficient to comply with Alaska's *corpus delicti* rule.

Finally, we hold that when a trial judge erroneously rules that the State has satisfied the *corpus delicti* rule, and this Court reverses the trial judge's ruling on appeal, the defendant is entitled to a new trial but not outright dismissal of the charge.

### *Underlying facts*

In the early morning hours of November 27, 2008, officers of the Fairbanks police went to an apartment building in response to a report of a domestic dispute. This report was made by Langevin's girlfriend, Shari Kelly. Based on what the police discovered when they arrived, Langevin was charged with driving under the influence. Here is the State's evidence, presented in the light most favorable to the jury's verdict:

When the police arrived, they found Langevin in the hallway outside his apartment. Langevin told the officers that he had been standing outside for over an hour—that Kelly had taken his keys and had locked him out of their residence. This statement was verified when the police entered the residence and interviewed Kelly; they found the keys in her possession.

Langevin was visibly intoxicated; in fact, he conceded to the officers that he was "three sheets to the wind". However, Langevin also stated several times that he had not had anything to drink since he arrived home. Rather, Langevin said, he and Kelly had been drinking at the Manchu Bar earlier that night.

According to Langevin, he and Kelly stayed at the bar until closing time (which, under Fairbanks law, would have been 3:00 a.m.), and then he started driving them home. In his statements to the police, Langevin gave two accounts of how his driving ended. At one point in the interview, Langevin indicated that he drove all the way home, at which point he stopped and said, "I'm not driving no more, period. I'm throwing the keys away." But at another point in the interview, Langevin said that Kelly grabbed the keys while he was driving (*i.e.,* while the keys were in the ignition) and turned the truck off.

Langevin pointed out the truck that he had driven. However, the police did not check the truck to see if the engine was warm or to see if there was any other indication that the truck had been recently driven.

Langevin's statement that he had not been drinking since he came home was corroborated by the fact that the officers could not see any containers of alcoholic beverages in Langevin's vicinity.

At Langevin's trial, the State did not call Kelly as a witness, nor did the State present any other witnesses who had actually seen Langevin driving the truck, or who had seen Langevin and Kelly at the Manchu Bar earlier that morning.

At the close of the State's case, Langevin's attorney asked the district court to enter a judgement of acquittal on the basis that the State had failed to satisfy the *corpus delicti* rule, by failing to introduce evidence (apart from Langevin's statements to the police) to establish that the crime of driving under the influence had been committed. The district court denied this motion. Langevin's attorney also asked the trial judge to instruct the jury on the *corpus delicti* rule (*i.e.*, telling the jurors that Langevin could not be convicted unless the jurors concluded that the State had satisfied the *corpus delicti* rule). The trial judge refused to give the requested instruction. The jury convicted Langevin of driving under the influence.

*Should the ultimate decision as to whether the government has satisfied the corpus delicti rule be made by the trial judge or, instead, the jury?*

Our decision in *Dodds v. State*, 997 P.2d 536, 539–543 (Alaska App.2000), contains a lengthy discussion of the *corpus delicti* rule and the ways in which this rule has been interpreted in American jurisdictions. Some jurisdictions view *corpus delicti* as an evidentiary foundation that the government must lay in order to justify the introduction of the defendant's out-of-court confession. But other jurisdictions view *corpus delicti* as an implicit element of the government's proof (in cases where the government introduces evidence of the defendant's confession).

Under the "evidentiary foundation" view, the trial judge decides whether the State has satisfied the *corpus delicti* rule (just as the judge decides other evidentiary questions). But under the "implicit element" view, the question of *corpus delicti* is decided at the end of the trial by the trier of fact (*i.e.*, by the jury, unless the defendant has consented to a bench trial).

Although we discussed this matter at length in *Dodds*, we did not have to decide which of these two approaches was the proper one under Alaska law—because Dodds raised the issue as a claim of plain error. *Id.* at 543. But in Langevin's case, the defense attorney explicitly asked to have the jury decide whether the State had satisfied the requirements of the *corpus delicti* rule, so we must now declare Alaska law on this issue.

■ As we explained in *Dodds*, Alaska cases (both before and after statehood) have followed the "evidentiary foundation" approach to *corpus delicti*.[1] That is, the *corpus delicti* rule has been interpreted in Alaska as a rule that defines the level of supporting evidence that the government must present if the government wishes to introduce the defendant's out-of-court confession for the truth of the matters asserted. Under this approach,

[The] decision [regarding *corpus delicti* is] made by the trial judge before the case is submitted to the jury. The judge [assesses] the sufficiency of the State's evidence to prove the *corpus delicti*, and this decision [is] one of law—similar to the judge's assessment of the sufficiency of any other evidentiary foundation under Alaska Evidence Rule 104(a)-(b). Assuming the judge [rules] that the *corpus delicti* had been established, then, at the end of trial, the jury [considers] all of the evidence (including the defendant's confession) and [decides] whether the State [has] estab-

---

**1.** *See Perovich v. United States,* 205 U.S. 86, 27 S.Ct. 456, 51 L.Ed. 722 (1907); *Castillo v. State,* 614 P.2d 756 (Alaska 1980); *Drumbarger v. State,* 716 P.2d 6 (Alaska App.1986); *McKenzie v. State,* 776 P.2d 351 (Alaska App.1989). We discussed all four of these cases in detail in *Dodds,* 997 P.2d at 541–43.

lished each element of the charged crime beyond a reasonable doubt.

*Dodds,* 997 P.2d at 540.

In his brief to this Court, Langevin points out that several other jurisdictions follow the "implicit element" approach to *corpus delicti,* and he urges us to do the same. But Langevin does not address the prior Alaska cases on this issue—cases which follow the "evidentiary foundation" approach—nor does Langevin explain why those cases were wrongly decided or should now be abandoned on policy grounds.

Moreover, in *Dodds* we pointed out that the "implicit element" approach presents a major difficulty—because, at the end of the trial, the jury is asked to decide whether the government has satisfied the *corpus delicti* rule *after* the jurors have already heard the defendant's confession:

> The "implicit element" approach to *corpus delicti* is difficult to reconcile with our law's normal view concerning a jury's ability to dispassionately assess a confession. Confessions can be powerful evidence, and courts have traditionally feared that, once a jury hears the defendant's confession, the jury will be unable to put aside this knowledge.
>
> One example of the cautious approach taken by courts when faced with admitting defendants' confessions is the *Bruton* rule—the rule that, when two or more defendants are being tried jointly, if one defendant has confessed and has implicated the co-defendants, that confession can not be admitted unless the confessing defendant takes the stand. [*See Bruton v. United States,* 391 U.S. 123, 126, 128–29, 88 S.Ct. 1620, 1622, 1624, 20 L.Ed.2d 476 (1968).] ... The [Supreme] Court concluded that, once the jury heard that one of the defendants had confessed and had implicated one or more co-defendants, the jurors simply could not be trusted to obey an instruction that forbade them from considering that confession when assessing the guilt of the other defendants.
>
> The "implicit element" approach to the *corpus delicti* rule suffers from this same

psychological difficulty. Under this approach, if the trial judge rules that *corpus delicti* is satisfied, the jury would hear the defendant's confession, only to later be asked to set the confession to one side and determine whether the government's remaining evidence is sufficient to establish the *corpus delicti.* One might doubt whether jurors, having heard the defendant's confession to a heinous crime, could dispassionately discharge this duty.

*Dodds,* 997 P.2d at 540–41.

Langevin's brief does not address this portion of the *Dodds* opinion. But Professor LaFave, in his treatise on criminal law, characterizes this passage from *Dodds* as a cogent criticism of the "implicit element" approach. *See* Wayne R. LaFave, *Substantive Criminal Law* (2nd ed. 2003), § 1.4(b) & n. 33, Vol. 1, pp. 31–32.

In sum, Alaska cases have historically employed the "evidentiary foundation" approach to *corpus delicti,* and there are good reasons to question the "implicit elements" approach. Accordingly, we now hold that Alaska law follows the "evidentiary foundation" approach to *corpus delicti.*

Under the "evidentiary foundation" approach to *corpus delicti,* the decision as to whether the State has satisfied the *corpus delicti* rule is a decision for the trial judge, not the jury. Therefore, Langevin's trial judge correctly denied Langevin's request to have the jury decide this matter.

*Did the State satisfy the requirements of the corpus delicti rule in Langevin's case?*

The *corpus delicti* rule is usually described as the doctrine that a criminal conviction can not rest solely on the defendant's confession—that the government must present independent evidence tending to show that the charged crime did, in fact, occur (in the sense that the unlawful act described in the indictment or complaint was committed by *someone* ).[2]

But under Alaska law, the *corpus delicti* rule is more accurately described as the doctrine that "a criminal conviction can not rest on an uncorroborated confession". *Dodds,*

---

**2.** *See, e.g.,* Wayne R. LaFave, *Substantive Crimi-* *nal Law* (2nd ed. 2003), § 1.4(b), Vol. 1, p. 29.

997 P.2d at 538. In Alaska, the *corpus delicti* rule does not focus on whether the government has produced independent proof of the criminal act, but instead on whether the government has produced substantive corroboration of the defendant's confession.

The leading Alaska case on the *corpus delicti* rule is the supreme court's decision in *Armstrong v. State*, 502 P.2d 440 (Alaska 1972). In *Armstrong*, the supreme court acknowledged that there was a "wide diversity" in the formulation of the *corpus delicti* rule among American jurisdictions. *Id.* at 447. The supreme court then declared:

> [T]he proper and most workable [*corpus delicti*] rule is the one laid down for the federal courts in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), where the [Supreme Court] held that [the] corroborative evidence need not be sufficient, independent of the [defendant's] statements, to establish the [criminal act]. Rather, the prosecution must introduce "substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement." *Id.*, [348 U.S.] at 93, 75 S.Ct. at 164, 99 L.Ed. at 109.

*Armstrong*, 502 P.2d at 447.

■ Thus, under Alaska law, the government must produce independent evidence that substantially corroborates the defendant's confession, but this evidence need not independently prove the commission of the crime. *Drumbarger v. State*, 716 P.2d 6, 12 (Alaska App.1986); *McKenzie v. State*, 776 P.2d 351 (Alaska App.1989).

The *McKenzie* decision involved an appeal of a conviction for driving under the influence, and one of the issues raised on appeal was whether the State's evidence was sufficient to satisfy the *corpus delicti* rule.[3] This Court concluded that the *corpus delicti* rule was satisfied because the State presented evidence that the defendant had a blood alcohol level of .17 percent, and the State also presented circumstantial evidence that corroborated the defendant's admission that she had been driving: the defendant was found in the front seat of a car that had apparently

just gone off the road, and the defendant was the owner of this car. *Id.*, 776 P.2d at 352.

■ The *corpus delicti* question in Langevin's case is more difficult because, unlike *McKenzie*, the State presented no independent evidence linking Langevin to the recent operation of the vehicle.

In *McKenzie*, the State presented evidence that the defendant was found in the vehicle, that the vehicle belonged to her, and that the vehicle had apparently just gone off the road—strong circumstantial evidence that the defendant had recently been driving the vehicle. But in Langevin's case, there was no evidence that anyone observed Langevin in the truck, much less driving the truck. Moreover, as we explained earlier, the State did not call any witnesses to verify Langevin's presence in the Manchu Bar earlier that morning (which would at least have been circumstantial evidence that Langevin came home in a motor vehicle). And the police who investigated this case did not check the truck to see if its engine was still warm, or to see if there was any other physical evidence in the truck to corroborate Langevin's admission that he had recently driven the vehicle.

It is true that the police corroborated one significant aspect of Langevin's story: his keys were inside the apartment, in the possession of his girlfriend, Shari Kelly. But while Kelly's possession of the keys certainly corroborated Langevin's assertion that he had quarreled with Kelly, and that she had locked him out of the apartment, Kelly's possession of the keys did not corroborate the State's primary assertion that Langevin had recently driven the vehicle while he was under the influence.

Apart from the inferences that might be drawn from Langevin's admissions to the police, there was no independent evidence to establish *why* Langevin and Kelly had quarreled, or *when* she had taken his keys. While the independent evidence was consistent with Langevin's claim that Kelly took his keys after he drove home under the influence, the independent evidence was just as consistent with the supposition that Kelly took the keys from Langevin as they were

---

**3.** 776 P.2d at 352.

leaving the Manchu Bar, to *prevent* Langevin from assuming physical control of the vehicle while he was under the influence. Indeed, the independent evidence was also just as consistent with the supposition that Langevin and Kelly had not been to the Manchu Bar, but rather had been drinking at home, and then Kelly quarreled with Langevin and threw him out of the apartment—but kept his keys so that he would not be able to drive.

Because this was the nature of the evidence at Langevin's trial, we are confronted with a question regarding the proper interpretation of the Alaska Supreme Court's decision in *Armstrong*. According to *Armstrong*, the Alaska version of the *corpus delicti* rule requires the government to introduce "substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement". 502 P.2d at 477. The question is how broadly the supreme court intended this formulation to be interpreted.

 Even though the State's independent evidence does not need to independently *establish* the commission of the crime, must the State's independent evidence at least *corroborate* the defendant's assertion that the crime was committed? Or did the supreme court mean that the State's independent evidence does not even have to be relevant to the issue of whether the crime was committed, as long as the independent evidence tends to corroborate the defendant's confession by lending support to other, collateral assertions contained in the defendant's statement—for example, Langevin's assertion that Kelly took his keys and locked him out of the apartment?

If we were to give *Armstrong* this latter, broader interpretation, then Alaska's *corpus delicti* rule would be largely cut off from its common-law roots. The State would be under no obligation to produce independent evidence that the crime to which the defendant confessed actually occurred. Rather, the State would only be obliged to produce evidence tending to corroborate *some* aspect of the defendant's out-of-court statement— potentially, such collateral details as the defendant's description of the weather, or the defendant's description of what was served for dinner.

We do not believe that the supreme court intended to depart so far from the common-law requirement of *corpus delicti*. We therefore interpret *Armstrong* to require the State to produce independent evidence that corroborates the defendant's assertion that the crime was committed. This independent evidence can be circumstantial (as was the case in *McKenzie* ), but the evidence must be relevant to the issue of whether the crime was committed, and not simply to the issue of whether the defendant was speaking truthfully.

The State's independent evidence in Langevin's case fails this test. The State failed to satisfy the *corpus delicti* rule.

*What is Langevin's remedy, now that we have ruled that the State failed to satisfy the requirements of the corpus delicti rule?*

As we explained earlier in this opinion, and as we explained at some length in *Dodds v. State*, there are two schools of judicial thought regarding *corpus delicti*. Some courts follow the rule that *corpus delicti* is the evidentiary foundation that must be laid if the government wishes to introduce evidence of a defendant's out-of-court confession. Other courts follow the rule that *corpus delicti* is an implicit element of the government's proof whenever the government relies on a defendant's out-of-court confession.

 We have concluded that Alaska is an "evidentiary foundation" jurisdiction. Thus, in Alaska, the *corpus delicti* rule bars the government from introducing a defendant's out-of-court confession (for the truth of the matter asserted) unless the government presents sufficient corroborating evidence to establish the trustworthiness of the confession with regard to whether the confessed crime was actually committed.

In Langevin's case, the defense attorney did not object to the introduction of Langevin's confession at the time it was offered into evidence. Rather, the defense attorney waited to make the *corpus delicti* objection until

the prosecutor announced that the State was resting its case-in-chief. We do not, however, believe that the timing of the defense attorney's objection affected the parties' rights.

As Professor LaFave explains, the traditional form of the *corpus delicti* rule "may have barred the government from introducing the defendant's confession until it had first proved the *corpus delicti*", but "it is now generally accepted that a trial judge has the discretion to [allow] the government [to] introduce the defendant's confession before it has introduced the additional evidence that will establish the *corpus delicti,* so long as the *corpus delicti* is proved before the government rests." *Substantive Criminal Law,* § 1.4(b), Vol. 1, p. 31.

Thus, if Langevin's attorney had raised the *corpus delicti* objection at the first opportunity—in other words, if the defense attorney had objected when the prosecutor offered Langevin's confession—the trial judge would have had the discretion to let the prosecutor introduce the challenged evidence, with the understanding that the prosecutor had to satisfy the *corpus delicti* rule by the end of the State's case-in-chief.

Instead, Langevin's attorney waited until the close of the State's case-in-chief to raise the issue of *corpus delicti.* At that time, the defense attorney argued that the State had failed to adequately corroborate Langevin's confession, and the defense attorney asked the trial judge to enter a judgement of acquittal.

Had the trial judge sustained the defense attorney's *corpus delicti* objection at that time (in other words, had the trial judge ruled that the State's corroborating evidence was insufficient to establish the required evidentiary foundation for Langevin's confession), the judge would have had the discretion to allow the State to re-open its case to cure this deficiency. *See* LaFave, *Substantive Criminal Law,* § 1.4(b), Vol. 1, p. 31, and Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* (3rd ed. 2007), § 24.6(b), Vol. 6, pp. 442–43. But this question never arose, because the trial judge ruled that the State *had* satisfied the *corpus delicti* rule.

As we explained in the preceding section of this opinion, we agree with Langevin that the State failed to satisfy the *corpus delicti* requirement in Langevin's case. However, this does not mean that Langevin is entitled to a judgement of acquittal.

We acknowledge that the majority position in this country is that a defendant is entitled to an acquittal if the government introduces evidence of the defendant's out-of-court confession but fails to satisfy the *corpus delicti* rule. *See* LaFave, *Substantive Criminal Law,* § 1.8(i), Vol. 1, pp. 97–98. But it must be remembered that most American jurisdictions follow the "implicit element" approach to *corpus delicti.* LaFave, § 1.4(b), Vol. 1, p. 31; *Dodds,* 997 P.2d at 540. Under this approach, *corpus delicti* is an element of the government's proof—and the general rule is that a defendant is entitled to a judgement of acquittal if the government fails to offer proof of each element of the crime.

■ But under Alaska's "evidentiary foundation" approach to *corpus delicti,* the corroborating evidence is not an element of the State's proof; rather, it is the foundation that must be laid to make the defendant's confession admissible in evidence.

The defendant may raise a *corpus delicti* objection when the government first offers the confession in evidence, or the defendant may wait until the government concludes its case-in-chief. But either way, the objection is of the same nature. A *corpus delicti* objection is not the same as an assertion that the government's evidence is legally insufficient to support a verdict in the government's favor. Rather, a *corpus delicti* objection is an assertion that the government should not be allowed, or should not have been allowed, to introduce the defendant's confession as part of its case.

■ Because a *corpus delicti* objection does not challenge the sufficiency of the State's proof, but rather the admissibility of a portion of the State's evidence, when a defendant loses a *corpus delicti* objection at trial and then successfully pursues the issue on appeal, the defendant's remedy is not a judgement of acquittal. Instead, the defen-

dant's remedy is a new trial. As the United States Supreme Court held in *Lockhart v. Nelson*, 488 U.S. 33, 40–42, 109 S.Ct. 285, 290–92, 102 L.Ed.2d 265 (1988), and as this Court held in *Houston–Hult v. State*, 843 P.2d 1262, 1265 n. 2 (Alaska App.1992), a defendant who successfully contends on appeal that the trial judge should have excluded a portion of the government's evidence can not then argue that the government's remaining evidence was insufficient to withstand a motion for judgement of acquittal. Rather, the sufficiency of the evidence is assessed in light of *all* the evidence presented at the defendant's trial—even the evidence that was wrongfully admitted. *See* LaFave, Israel, and King, *Criminal Procedure*, § 25.4(c), Vol. 6, pp. 651–52.

As we noted earlier, had the trial judge sustained Langevin's *corpus delicti* objection, the judge would have had the discretion to allow the State to re-open its case to cure this deficiency. And we can not know what additional evidence the State might have presented to corroborate Langevin's confession if the trial judge had ruled that the State's existing evidence was not sufficient for this purpose. *See Houston–Hult*, 843 P.2d at 1265 n. 2.

It is, of course, possible that a defense attorney might simultaneously raise a *corpus delicti* objection and a motion for a judgement of acquittal. In other words, a defense attorney might argue that the government had failed to sufficiently corroborate the defendant's confession to satisfy the requirement of *corpus delicti* and, at the same time, argue that the government's evidence taken as a whole (*i.e.*, even including the defendant's confession) was insufficient to justify a guilty verdict.

But although Langevin's attorney referred to his motion as a request for a judgement of acquittal, it is clear that the defense attorney was *not* asserting that the State's evidence was insufficient even if Langevin's confession was taken into consideration. Rather, Langevin's attorney was arguing that the State should not have been allowed to introduce Langevin's confession—and that, *without* the confession, the State's evidence was insufficient to support a guilty verdict.

This latter portion of the defense attorney's argument was legally erroneous. Here, it is obvious that when Langevin's confession is taken into account, the State's evidence was sufficient to support a conviction. Even though we have held that the trial judge should have sustained Langevin's *corpus delicti* objection to the admission of the confession, it is irrelevant (for judgement of acquittal purposes) that the State's evidence would have been insufficient without Langevin's confession.

*Conclusion*

The judgement of the district court is REVERSED. Langevin is entitled to a new trial.